UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms | | |

| Present: The Honorable | GARY R. KLAUSNER, United States District Judge | |
|---|---|---|
| Sharon Williams | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**      (IN CHAMBERS)

**ORDER RE Motion for Preliminary Injunction (DE 11)**

     Pending before the Court is Coachella Music Festival's and Goldenvoice's Motion for a Preliminary Injunction against Robert Trevor Simms ("Simms"). (Dkt. No. 11.) Coachella Music Festival and Goldenvoice seek a preliminary injunction to prevent Simms from using the terms "Filmchella," "Coachella for Movies," "Coachella Film Festival," or any other confusingly similar variant of its mark. (Dkt. No. 11 at 2.) Allegedly, Simms is trading upon the valuable goodwill of Coachella, which has used the mark "Coachella" in the United States since the first Coachella Music Festival in 1999. (Bernstein Decl. ¶ 7, Exh. 12.) Coachella Music Festival argues that, unless enjoined, Simms's unlawful actions will cause consumer confusion, dilution of its marks, and other irreparable harm. The Court finds that Coachella Music Festival has demonstrated the requirements for a preliminary injunction. For the following reasons, the Court **GRANTS** Plaintiffs' Motion.

## I.     BACKGROUND

### A.     The Parties

     Coachella Music Festival, LLC ("Coachella," or "Coachella Music Festival") and Goldenvoice, LLC ("Goldenvoice") (collectively "Plaintiffs") own and operate the multi-day Coachella Valley Music & Arts Festival, which was the top grossing music festival in the world in 2015. (Bernstein Decl. ¶ 6, Exh. 1.) The first Coachella was held in October 1999, and Plaintiffs host Coachella each year at the 78-acre Empire Polo Club in Indio, California. (Bernstein Decl. ¶¶ 4, 7.) Coachella routinely includes performances by many famous musicians as well as newer up and coming artists. (Bernstein Decl. ¶ 9, Exh. 4.)

     Coachella Music Festival owns federal trademark Registration Nos. 3,196,119; 4,270,482; 3,196,129; 4,266,400; 5,235,905; 5,235,903; 3,196,128; 3,965,563; 4,008,651; 5,075,233; and 3,851,272, which in aggregate protect 1) the non-stylized characters "Coachella" 2) the stylized

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | **Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms** | | |

"Coachella" 3) the non-stylized "Coachella Valley Music & Arts Festival" 4) the non-stylized "Chella" and 5) the stylized "Chela." (Bernstein Decl. Exh. 12.)

Defendant Simms has organized and promoted the "Filmchella" film festival, to be held beginning on September 29, 2017. (Simms Decl. at ¶¶ 8-9.) Filmchella was designed to be a three-day movie festival, and a "more serious, low-ticket price event aimed at accomplished new filmmakers, their friends, families, and fans," involving a film submission and selection process. (Dkt. 21 at 11-12, Bernstein Supp. Decl. Exh. 2.) Simms is a new film director, who wrote, produced, directed, starred in, edited, and self-financed his first feature film "Misirlou," which was completed in 2016 and allegedly won best feature film at the Russian International Film Awards. (Simms Decl. at ¶¶ 2-3, Exh. 1.) Simms applied to trademark the term "Filmchella," and the mark was published in the Trademark Official Gazette on August 8, 2017. (Simms Decl. Exh. 11-12.) Plaintiffs opposed the "Filmchella" trademark. (Simms Decl. ¶ 24).

### B. The Instant Dispute

In early 2017, Simms created a website, www.fimchella.com, to promote Filmchella, and he secured a venue, accepted film submissions, promoted the event on social media, and scheduled the Filmchella film festival to begin on September 29, 2017, in Joshua Tree, California. (Simms Decl. at ¶¶ 8-9, 12.) Counsel for Coachella emailed a cease and desist letter to Simms on or about March 7, 2017, demanding that Simms change the name of Filmchella to avoid using any of the Coachella trademarks— and any other marks that might be confusingly similar to the Coachella trademarks—and that Simms transfer the domain names to Plaintiffs. (Bernstein Decl. ¶ 36, Exh. 17).

After Simms met with Goldenvoice's representatives, Plaintiffs and Simms were not able to reach an agreement. (Simms Decl. Exh. 10, Exh. 13, Bernstein Decl. Exh. 19.) Plaintiffs filed this lawsuit, and have brought a motion seeking a preliminary injunction. (Dkt. 11.)

## II. PROCEDURAL HISTORY

On August 15, 2017, Plaintiffs filed a Complaint alleging (1) Trademark Infringement in violation of 15 U.S.C. § 1114(1); Trademark Infringement and False Designation of Origin in violation of 15 U.S.C. § 1125(a); (3) Dilution under 15 U.S.C. § 1125(c); (4) Cybersquatting under 15 U.S.C. § 1125(d); and (5) Violation of California Unfair Competition and Trademark Law. (Compl. ¶¶ 75-126.) On August 18, 2017, Plaintiffs filed a Motion for a Preliminary Injunction. (Dkt. No. 11.) Simms, appearing pro se, filed an Opposition to the Motion for a Preliminary Injunction on September 5, 2017. (Dkt. No. 21.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms | | |

### III. LEGAL STANDARD

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a court may grant preliminary injunctive relief. Yet, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 17. Before a court may grant a preliminary injunction, the moving party must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm if no preliminary injunction is granted, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20. The Ninth Circuit has indicated that this test may also be applied on a sliding scale: if there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the [moving party]" a court may still grant a preliminary injunction, but only if the moving party also demonstrates a likelihood of irreparable injury and the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, even where a plaintiff is unable to show a *likelihood* of success on the merits, but can at least demonstrate there are serious questions going to the merits, and the balance of hardships strongly favors the plaintiff, a court may grant preliminary injunctive relief so long as there is still a showing on the last two elements. *See id.* at 1131, 1134-35 ("[A] stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits.").

In considering a request for preliminary injunction, a court must remain mindful that such relief is aimed primarily at preserving the status quo pending trial. *See Los Angeles Mem. Coliseum Comm'n v. Nat. Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980) (a "fundamental principle" governing preliminary injunctive relief is the need to maintain the status quo prior to determination on the merits).

Due to the exigent nature of a preliminary injunction, a party may be unable to produce admissible evidence in support of its position. *Puricle, Inc. v. Church & Dwight Co., Inc.*, 568 F. Supp. 2d 1144, 1147 (C.D. Cal. 2008). Nevertheless, for purposes of a preliminary injunction, a court may properly consider evidence that would otherwise be inadmissible at trial. *Id.* Indeed, a court has discretion to weigh evidence submitted in support of or against a motion for preliminary injunctive relief. *Id.*

### IV. DISCUSSION

Plaintiffs argue that with respect to their trademark infringement claim, they have made the requisite showing for injunctive relief. Plaintiffs move for a preliminary injunction to prevent Simms from continuing to use the term "Filmchella" or other terms that might dilute or otherwise infringe on the Coachella trademarks. (Dkt. No. 11.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | **Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms** | | |

As discussed below, the Court finds that there are, at the very least, serious questions going to the merits. Additionally, the Court finds that irreparable harm is likely, that the balance of the equities tips sharply in favor of Plaintiffs, and that the public interest favors an injunction.

### A.     Likelihood of Success on the Merits

Plaintiffs assert claims of trademark infringement of the "Coachella" and "Chella" word trademarks and unfair competition under Cal Bus. Prof. Code sections 17200 *et seq.* (Compl. ¶¶ 75-94, 120-126.) To prevail on a claim of trademark infringement under the Lanham Act, a party "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005); 15 U.S.C. § 1114.

#### 1.     Plaintiffs Establish a Protectible Ownership Interest in the Marks

Plaintiffs proffer trademark registrations for the trademarks "Coachella" and "Chella." (Bernstein Decl. ¶ 27, Exh. 12.) In so doing, Plaintiffs provide prima facie evidence of a valid trademark. *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007). Simms does not contest that Coachella Music Festival has registered the "Coachella" trademarks, but argues instead that "Coachella" has no claim to the "Filmchella" mark. (Dkt. 21 at 8.)

Indeed, Plaintiffs have no claim to the "Filmchella" mark, but for the purposes of determining whether dilution or confusion is likely to occur with the marks "Coachella" and "Chella," Plaintiffs have established that they possess the relevant registered marks. In the absence of any evidence otherwise, Simms fails to rebut the presumption of trademark validity. Therefore, the Court finds that this element weighs in Plaintiffs' favor.

#### 2.     Likelihood of Confusion

Likelihood of confusion exists "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir. 1993) (internal quotation marks omitted). Thus, "[t]he test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). "The confusion must 'be probable, not simply a possibility.'" *Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms | | |

Courts generally consider eight factors in determining whether a likelihood of confusion exists between products bearing an original trademark and accused products. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). The eight factors, typically referred to as the *Sleekcraft* factors, are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012); *see also Sleekcraft*, 599 F.2d at 348-49. These factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). In fact, "it is often possible to reach a conclusion . . . after considering only a subset of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). The Court finds that these factors weigh overall in Plaintiffs' favor.

### i. Strength of the Mark

"[U]nlike arbitrary or fanciful marks which are typically strong, suggestive marks are presumptively weak." *Brookfield Commc'ns*, 174 F.3d at 1058. Marks are generally classified along a spectrum, with descriptive marks being the weakest and arbitrary or fanciful marks being the strongest. *Sleekcraft*, 599 F.2d at 349. Nevertheless, "placement within the conceptual distinctiveness spectrum is not the only determinant of a mark's strength, as advertising expenditures can transform a suggestive mark into a strong mark where, for example, that mark has achieved actual marketplace recognition." *Brookfield Commc'ns*, 174 F.3d at 1058 (internal citations omitted).

At first glance, the "Coachella" mark appears descriptive and geographical, since the Coachella Valley Music and Arts Festival takes place in Indio, California, within the Coachella Valley. (Bernstein Decl. ¶ 4.); *see, e.g.*, *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1114-15 (N.D. Cal. 2010) ("'Sand Hill Advisors' [located on Sand Hill Road] is primarily geographically descriptive."). However, a mark may acquire a "secondary meaning" over time, once "one of the connotations that a mark evokes is the particular good or service that it identifies." *See Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987) (explaining that the mark "Rodeo Collection," the name of a shopping center on Rodeo Drive, may possess a secondary meaning and be a strong mark). This can be achieved through large advertising expenditures and extensive use of the mark in connection with a large volume of commercial transactions. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988).

Here, Plaintiffs introduce evidence that in one year alone, they invested over $625,000 dollars in media and related content to promote COACHELLA. (Bernstein Decl. ¶ 20.) Moreover, Coachella has gained wide recognition and notoriety, drawing approximately 750,000 attendees in a single year, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms | | |

grossing $84 million in 2015, making it the top grossing music festival in the world for that year. (Bernstein Decl. ¶¶ 4-6.) Given Coachella's widespread notoriety, press, advertising, and popularity, this Court finds that "Coachella" has become a strong and distinctive mark that has achieved actual marketplace recognition.

Thus, the Court finds that this factor weighs in favor of Plaintiffs.

### ii. Proximity and Type of Goods, Degree of Care by the Purchaser, and Marketing Channels Used

Due to substantial overlap between these *Sleekcraft* factors, the Court will consider them together. "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield Commc'ns*, 174 F.3d at 1055. "For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350. Similarly, "[c]onvergent marketing channels [also] increase the likelihood of confusion." *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1164 (N.D. Cal. 2011) (internal quotation marks omitted).

As Simms points out, the festivals are quite different. (Dkt. 21 at 10.) Coachella (or the "Coachella Valley Music and Arts Festival") focuses almost entirely on music, whereas Filmchella focuses entirely or almost entirely on film and is advertised as a "film festival," not a music festival. (Bernstein Decl. Exh. 4.) Coachella's inclusion of 10-minute short film shows, while not negligible, does not change the nature of Coachella from a music festival to a film festival. (Bernstein Decl. ¶ 10.)

Nonetheless, Plaintiffs have introduced evidence showing that Filmchella draws great inspiration from Coachella. Both are hosted in the desert, over several days. (Bernstein Decl. ¶ 4; Dkt. 21 at 4; Bernstein Supp. Decl. Exh. 2 at 7). In fact, Filmchella was previously marketed as "Coachella for Movies." (Bernstein Decl. Exh. 14 at 111.) Therefore, the festivals are related enough that the public may very well believe or be confused about whether Filmchella is part of, or an affiliate of, the larger Coachella.

As to the purchaser's degree of care, a purchaser of a festival ticket—one who is committing a significant amount of time to attend a multi-day event—would likely take enough care to determine that they are buying a ticket for the correct festival. However, it would be a stretch to find that degree of care extending to determining whether Filmchella is affiliated with Coachella.

Finally, Plaintiffs and Defendant use similar marketing channels, including, but not limited to Facebook, Twitter, social media, and party owned and operated websites on the Internet. (Bernstein Decl. ¶¶ 16-20, Exhs. 8-11, 14-16.) Since both Plaintiffs and Defendant digitally promote multi-day

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms | | |

artistic festivals to be held in desert locations, these factors overall suggest that a likelihood of confusion exists.

On balance, the relatedness of the goods, the degree of care exercised by the purchaser, and the similar marketing channels weigh in favor of Plaintiffs.

### iii. Similarity of the Marks

The degree of similarity between the parties' trademarks is an important factor. *See Brookfield Commc'ns*, 174 F.3d at 1054. "[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion. In analyzing this factor, the marks must be considered in their entirety and as they appear in the marketplace." *Id.* (internal citations and quotation marks omitted).

Here Simms uses the mark "Filmchella," and Plaintiffs reference a poster using a stylized "Filmchilla" mark which mimics the styling and font of the stylized "Coachella." (Dkt. 12 at 18-19.) It is disputed, however, whether these posters were actually distributed or authorized by Simms. (Dkt. 21 at 12; Simms Decl. ¶ 30.)

It is undisputed, however, that Defendant used the mark "filmchella"—all lowercase, italicized, and in a different and bolder font than the stylized "Coachella"—when promoting Filmchella. (Bernstein Decl. Exh. 14, Exh. 16; Simms. Decl. Exh. 14, Exh. 15). The stylized font of "Coachella," by contrast, uses all capital letters, non-italicized typeface, and a different and distinctive font. Thus, the stylized "filmchella" looks quite different from the stylized "Coachella" mark:

 

Moreover, Simms argues that the beginning of the Mark is more important than the end of the mark in determining similarity. (Dkt. 21 at 12.) Plaintiffs counter that the Court should instead focus on the "dominant" element of the mark, and that the dominant element of the mark is "Chella." (Dkt. 25 at 5.) Ultimately, the difference in the beginning of the mark—"film" vs. "coa"—is significant, and immediately draws attention to the fact that Filmchella is a film festival, and different from Coachella.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **2:17-cv-06059-BRO-GJS** | Date | October 10, 2017 |
|---|---|---|---|
| Title | **Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms** | | |

However, the suffix "chella" is still sufficiently unique to create implicit associations with Coachella.[1] The exact same "chella" pattern of characters and the same ending sound make the marks similar in a way that is likely to cause actual confusion to casual viewers, who might reasonably believe that Filmchella is affiliated with the larger Coachella. Moreover, the fact that the opening characters in a name or title are different from the ending pattern of characters in a trademark does not defeat a likelihood of confusion nor a finding of similarity. *See, e.g*, *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1176 (9th Cir. 2007) ("The district court did not err in holding that the marks [Perfumebay and eBay] were similar enough to create a likelihood of confusion").

Since the suffix "chella" is unique and implicitly associated with (and even a registered trademark of) Coachella, the marks are similar enough for this factor to weigh slightly in favor of Plaintiffs.

### iv. Evidence of Actual Confusion

Evidence of actual confusion is strong evidence of a likelihood of confusion in the future. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002). The Court notes, however, that a reasonable juror could find *de minimis* evidence of actual confusion ultimately unpersuasive in the overall assessment of likelihood of confusion. *Id.* In any case, a showing of actual confusion is not necessary to a finding of likelihood of confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011).

Here, Plaintiffs note that actual confusion is not necessary at this stage. (Dkt. 12 at 20.); *see also Paul Frank Indust., Inc. v. Sunich*, 502 F. Supp. 2d 1094, 1101 (C.D. Cal 2007) (granting Plaintiff's Motion for preliminary injunction in part despite not having presented any evidence of actual confusion). Still, since Plaintiffs have not presented evidence of actual confusion, *see e.g.*, Dkt. 12 at 20, the Court finds that this factor weighs in favor of Simms.

### v. Likelihood of Expansion

"To resolve this factor, we must determine whether existence of the allegedly infringing mark is hindering the plaintiff's expansion plans." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005). "[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. "[E]xpressed interest in expanding [a] product line [is not enough], mere speculation is not evidence." *Survivor*, 406 F.3d at 634; *see also Clearly Food & Beverage Co.*, 102 F. Supp. 3d 1154, 1174 (W.D. Wash. 2015).

---

[1] Coachella Music Festival also trademarked the characters "CHELLA," per Reg. No. 5,075,233, perhaps in an attempt to avoid confusion based on its use. (Bernstein Decl. Exh. 12 at 98.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms | | |

Plaintiffs argue that the likelihood of expansion factor "strongly favors" a likelihood of confusion because "Plaintiffs and [Simms] offer directly competing services." Dkt. 12 at 22. However, Coachella is a music festival, and Filmchella is a film festival. Coachella's inclusion of some short films simply does not change the nature of the festival, and even a quick glance at promotional fliers confirms that Coachella's focus is almost entirely on music. (Bernstein Decl. ¶ 10, Exh. 4.) The products are not directly competing, and are targeted towards quite different audiences. *See, e.g.*, *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1125 (C.D. Cal. 2003) (finding that although Echo Drain and Echobrain are both music bands, they play different types of music and target different audiences). Coachella has produced no concrete evidence suggesting that they intend to start a stand-alone movie festival. Nor is there any indication that Simms intends to host a music festival.

Therefore, this factor favors Simms.

### vi.  Alleged Infringer's Intent

This factor favors the plaintiff when the alleged infringer adopted its mark or trade dress with either actual or constructive knowledge that it was another's mark or trade dress. *Brookfield Commc'ns*, 174 F.3d at 1059. "Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *Entrepreneur Media*, 279 F.3d at 1148. However, mere similarity between the marks is not dispositive of intent to confuse. *See, e.g.*, *Brookfield Commc'ns*, 174 F.3d at 1059. In fact, a defendant's conduct and statements can be more probative of intent than mere similarity between the marks. *Entrepreneur Media*, 279 F.3d at 1148-49.

Here, the Filmchella website advertised Filmchella as "Coachella for Movies," which evinces both awareness of Coachella and an intent to copy. (Bernstein Decl. Exh. 14 at 111.) Given Simms's marketing and use of "filmchella," Plaintiffs argue that Simms "clearly intended to trade on of [sic] the goodwill of Plaintiffs' famous Coachella Marks and to confuse consumers into thinking that FILMCHELLA was associated or affiliated with COACHELLA." (Dkt. 12 at 21.) Simms explains that he did not intend to confuse consumers, but rather to describe the nature of the festival—"Plaintiff claims Defendant has been using the phrase 'Coachella for Movies' on www.filmchella.com, however this phrase was merely descriptive . . . ." (Dkt. 21 at 12.)

It is therefore apparent that Filmchella, a multi-day festival hosted in the desert, marketed as "Coachella for Movies," was intended to copy, at least in part, the Coachella Music Festival. However, the intent to copy is not necessarily the intent to confuse. *See, e.g.*, *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 225–26 (3d Cir. 2000) ("[D]efendant's intent will indicate a likelihood of confusion only if an intent to *confuse* consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's."); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 745–46

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | **Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms** | | |

(2d Cir. 1998) ("The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product."). Moreover, good faith and an absence of intent to confuse may be found when a Defendant makes bona fide reliance on a trademark search or the advice of counsel. *See, e.g.*, *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993).

On one hand, Plaintiffs' argument that Simms intended to trade on the goodwill of Coachella's famous marks has a strong basis, since there was certainly an incentive for him to do so and in fact, he did copy some aspects of Coachella. (Dkt. 12 at 21.) On the other hand, Simms has provided evidence that he relied in good faith on a valid trademark search conducted by a trademark examiner—that did not return any conflicts[2]—and Simms's own subjective belief that "filmchella" did not infringe on "Coachella." (Dkt. 21 at 7; Simms Decl. ¶¶ 14-16, 18, 21-23).

Ultimately, the intent element is merely a proxy for determining likelihood of confusion—if a defendant picks a trademark with the intent to confuse, then the mark is more likely to be confusing because, after all, that was the goal. *Entrepreneur Media*, 279 F.3d at 1148 (stating that the alleged infringer's judgment as to what is likely to be confusing is relevant because it may well be accurate). Given Simms's declaration and trademark search, Simms may very well be trying to imitate Coachella's success, but Plaintiffs have not clearly established that Simms intended to confuse customers with regard to whether Filmchella was authorized or sponsored by Coachella.

Therefore, the Court finds that this factor weighs slightly in favor of Simms. Still, the Ninth Circuit has "emphasized the minimal importance of the intent factor" and that "no such intent [to confuse] is necessary to demonstrate a likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000).

### vii.   Likelihood of Confusion: Conclusion

In this case, the likelihood of confusion inquiry is directed at whether "the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350. Since both Coachella and Filmchella are both designed to be artistic, multi-day festivals in the desert; since Coachella's marks have become widely known and strong; and since using the suffix "chella" is likely to cause consumers to believe, or at least wonder, if Filmchella is affiliated with or sponsored by Coachella, the Court finds that the *Sleekcraft* test falls in Plaintiffs' favor.

Accordingly, Plaintiffs have demonstrated that there are serious questions going to the merits of their action against Defendant. *See Alliance for the Wild Rockies*, 632 F.3d at 1135. However, since

---

[2] Approval by a Patent Office official, however, is not dispositive to the likelihood of confusion inquiry. *See, e.g.*, *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms | | |

Simms's film festival is quite different from the Coachella Music and Arts Festival; since the Filmchella mark looks and sounds different from the full Coachella mark; since no actual confusion has been demonstrated; since there is no concrete evidence that the festivals would expand to directly compete with one another; and since Simms's intent was not necessarily to confuse, the court finds that Plaintiffs have not shown that they are *likely* to succeed on the merits. *Winter*, 555 U.S. at 20.

### B. Balance of the Equities

Since Plaintiffs have demonstrated that there are "serious questions" going to the merits of their action (but not demonstrated that they are likely to succeed on the merits) Plaintiffs must show that the balance of equities tips *sharply* in their favor. *See Alliance for the Wild Rockies*, 632 F.3d at 1135. A court balancing the equities will look to the possible harm that could befall the various parties. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) *aff'd*, 348 F. App'x 288 (9th Cir. 2009).

The Court finds that the balance of equities tips sharply in Plaintiffs favor. If a preliminary injunction is not issued, Plaintiffs may suffer significant irreparable harm due to confusion or damage to reputation. Still, Simms and Filmchella may lose goodwill and suffer some reputational harm during the period in which Simms would be enjoined from using the mark "Filmchella." For example, if the injunction is improperly granted, Simms would be required to change the name of any future film festivals he hosts while the injunction is effective to something other than Filmchella. However, since this order is being issued after the original Filmchella has taken place, any irreparable injury to Simms would be relatively small. Finally, the risk of irreparable injury to Simms must be weighed against the risk of irreparable injury to Coachella.

Given the meaningful likelihood of confusion with Coachella, the damage to reputation and goodwill that flows from confusion, and the fact that Coachella has much more goodwill that it stands to lose, Simms's risk of irreparable injury should the preliminary injunction be wrongly issued is ultimately outweighed. Additionally, an injunction prohibiting the use of the mark "Filmchella" would not prohibit Simms from hosting any other film festivals. *See, e.g.*, *Well Care Pharmacy II, LLC v. W' Care, LLC*, No. 2:13-CV-00540-GMN, 2013 WL 3200111, at *8 (D. Nev. June 24, 2013) ("[T]he Court does recognize that an injunction would force Defendants to change its name and, correspondingly, some of its branding. That being said, the requested injunction will not preclude Defendants from conducting its normal business activities so long as it is conducting those activities under a name that is not confusingly similar to WELL CARE.").

Thus, Plaintiffs have shown they are likely to suffer irreparable harm absent injunctive relief, and have they shown the balance of equities tips sharply in their favor. *See Alliance for the Wild Rockies*, 632 F.3d at 1135.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms | | |

### C. Irreparable Harm

As set forth above, once a plaintiff has established serious questions going to the merits and a balance of equities that tips sharply in its favor, the plaintiff must also demonstrate a likelihood that, without injunctive relief, they will be irreparably harmed by Simms's allegedly infringing conduct. *Alliance for the Wild Rockies*, 632 F.3d at 1135.

According to Plaintiffs, Simms's malfeasance has inflicted harm to their reputations, which remain at serious risk of further harm. (Dkt. No. 12 at 22-23.) It is true that "a loss of goodwill and reputation can" support injunctive relief. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009). In trademark cases, irreparable harm is typically found in a plaintiff's loss of control over their business reputation, loss of trade, and loss of goodwill. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990); *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, No. CIV. 2:10-2751, 2011 WL 221651, at *12 (E.D. Cal. Jan. 24, 2011) ("While 'economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award,' the Ninth Circuit has recognized that damage to goodwill is an irreparable harm. Business goodwill includes a company's reputation.") (citations omitted).

Plaintiffs have presented sufficient evidence to show a likelihood of reputational harm. Coachella has a significant reputation to uphold. It has drawn massive crowds and exceptionally popular artists. Filmchella has not. The festivals are different in type, in budget, and in ticket price— "'COACHELLA' tickets are very expensive. 'FILMCHELLA' tickets are very inexpensive." (Dkt. 21 at 10.) Plaintiffs have also raised concerns about whether the event will have adequate security and come forth with evidence suggesting that it may lack appropriate security. (Dkt. 25 at 9.) Given that there is an inherent likelihood of confusion regarding the extent to which Filmchella is associated with Coachella, Filmchella's success or failure would be likely to impact Coachella's reputation as well. Finally, Coachella's loss of control—their inability to control their reputation, and the extreme difficulty of attempting to quantify the monetary value or loss of sales due to such reputational damage—justifies a finding of irreparable injury. Altogether, Plaintiffs have shown that irreparable harm is likely.

### D. Public Interest

In trademark cases, the public interest is the right of the public not to be deceived or confused as to the source of the parties' goods. *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008). "When a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation." *BellSouth Adver. & Publ'g Corp. v. The Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | 2:17-cv-06059-BRO-GJS | Date | October 10, 2017 |
|---|---|---|---|
| Title | **Coachella Music Festival, LLC and Goldenvoice, LLC v. Robert Trevor Simms** | | |

    Having weighed the parties' evidence, the Court has found that the "Filmchella" mark may cause consumer confusion. Thus, the Court finds that the public interest factor weighs in Plaintiffs' favor.

## V.  CONCLUSION

    Plaintiffs have satisfied their burden of demonstrating that they are entitled to a preliminary injunction. As such, the Court **GRANTS** the requested relief.

    **IT IS SO ORDERED.**

:

Initials of Preparer