UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order Re: Defendant's Motion for Reconsideration of Preliminary Injunction (DE 47); Plaintiffs' Motion for Reconsideration of Preliminary Injunction (DE 52)

I. **INTRODUCTION**

On August 15, 2017, Plaintiffs Coachella Music Festival, LLC ("Coachella") and Goldenvoice, LLC ("Goldenvoice", and collectively, "Plaintiffs") filed a Complaint ("Complaint") against Defendants Robert Trevor Simms ("Simms") and Does 1–20. (Pl.'s Compl., ECF No. 1). On August 18, 2017, Plaintiffs moved for a preliminary injunction against Simms, seeking to prevent Simms from using the terms "Filmchella," "Coachella for Movies," "Coachella Film Festival," or any other confusingly similar variant of Coachella's trademark. (Mot. Preliminary Injunction, ECF No. 11). In that motion, Coachella argued that Simms was trading on the valuable goodwill of Coachella, and that unless enjoined, Simms's unlawful actions would cause consumer confusion, dilution of its marks, and other irreparable harm. On October 10, 2017, the Court granted Plaintiffs' Motion for a Preliminary Injunction. (Order Mot. Preliminary Injunction, ECF No. 38).

Presently before the Court are two dueling Motions for Reconsideration and Clarification pertaining to that preliminary injunction. First, Simms files a Motion for Reconsideration and Clarification of the Preliminary Injunction. (Def.'s Mot., ECF No. 47). Second, despite the fact that the Court ruled in their favor the first time around, Plaintiffs also file their own Motion for Reconsideration and Clarification of the Preliminary Injunction. (Pls.' Mot., ECF No. 52).

For the reasons below, the Court **DENIES** the parties' motions for reconsideration (DE 47 and DE 52), but clarifies the preliminary injunction in the manner set forth below.

II. **FACTUAL BACKGROUND**

A. **The Parties**

Plaintiffs own and operate the multi-day Coachella Valley Music & Arts Festival, which was the top grossing music festival in the world in 2015. (Bernstein Decl. ¶ 6, Exh. 1.) Coachella routinely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

includes performances by many famous musicians as well as newer up and coming artists. (Bernstein Decl. ¶ 9, Exh. 4.)

Coachella owns federal trademark Registration Nos. 3,196,119; 4,270,482; 3,196,129; 4,266,400; 5,235,905; 5,235,903; 3,196,128; 3,965,563; 4,008,651; 5,075,233; and 3,851,272, which in aggregate protect 1) the non-stylized characters "Coachella"; 2) the stylized "Coachella"; 3) the non-stylized "Coachella Valley Music & Arts Festival"; 4) the non-stylized "Chella"; and 5) the stylized "Chela." (Bernstein Decl. Exh. 12.).

Defendant Simms organized and promoted the "Filmchella" film festival, to be held beginning on September 29, 2017. (Simms Decl. at ¶¶ 8-9.). Filmchella was designed to be a three-day movie festival, and a "more serious, low-ticket price event aimed at accomplished new filmmakers, their friends, families, and fans," involving a film submission and selection process. (Dkt. 21 at 11-12, Bernstein Supp. Decl. Exh. 2.). Simms applied to trademark the term "Filmchella," and the mark was published in the Trademark Official Gazette on August 8, 2017. (Simms Decl. Exh. 11-12.). Plaintiffs opposed the "Filmchella" trademark. (Simms Decl. ¶ 24).

**B.   The Instant Dispute**

In early 2017, Simms created a website, www.filmchella.com, to promote Filmchella. He secured a venue, accepted film submissions, promoted the event on social media, and scheduled the Filmchella film festival to begin on September 29, 2017, in Joshua Tree, California. (Simms Decl. at ¶¶ 8-9, 12.) Counsel for Coachella emailed a cease and desist letter to Simms on or about March 7, 2017, demanding that Simms change the name of Filmchella to avoid using any of the Coachella trademarks—and any other marks that might be confusingly similar to the Coachella trademarks—and that Simms transfer the domain names to Plaintiffs. (Bernstein Decl. ¶ 36, Exh. 17). Simms refused. Plaintiffs then filed this lawsuit, and brought a motion seeking a preliminary injunction. (Dkt. 11.).

On October 10, 2017, the Court granted the preliminary injunction, but not before Simms had already held the first Filmchella film festival as planned at the end of September 2017. In that preliminary injunction order, the Court found that Plaintiffs had demonstrated "serious questions" as to whether there was a likelihood of confusion between the marks, but had failed to demonstrate "likelihood of success on the merits." (Order 11). However, the Court found that the "balance of the equities" tipped sharply toward the Plaintiffs because the likelihood of irreparable harm to them in the absence of an injunction was great, while the likelihood of harm to Simms from issuing the injunction was comparatively small. (Order 11–12). The Court therefore granted the injunction.

Plaintiffs now assert that Simms is violating the preliminary injunction order. Simms disagrees. He also asserts that he is confused as to the scope of the injunction, and as such moves for the Court to reconsider or, at least, clarify the scope of the injunction. Plaintiffs contend that the injunction is clear. Just in case, however, they file their own motion to clarify and reconsider the injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

### III.  JUDICIAL STANDARD

####  A.  Motion for Reconsideration

Federal Rule of Civil Procedure ("Rule") 59(e) governs a motion to reconsider a preliminary injunction, and Federal Rule of Civil Procedure 54(b) governs a motion to vacate or dissolve a preliminary injunction. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005). While a motion made under Rule 59(e) seeks to relitigate the issues underlying the original preliminary injunction, a motion made under Rule 54(b) seeks relief from inequities that arise after the original order. *Id.*

Relief under Rule 59(e) is appropriate only where the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Dixon v. Wallowa Cty.*, 336 F.3d 1013, 1022 (9th Cir. 2003) (internal citation omitted). A motion for reconsideration should not be used to reargue the motion or present evidence that should have been presented previously. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 881 (9th Cir. 2009) (citing *Kona Enters, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)) (internal quotation marks omitted).

Additionally Local Rule 7-18 states that a motion for reconsideration may be made only on the following grounds:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

####  B.  Motion for Clarification

An order imposing a preliminary injunction must "state its terms specifically," and "describe in detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). In order to ensure compliance with this rule, a district court may clarify the scope of an injunction. *Robinson v. Delicious Vinyl Records Inc.*, No. CV-13-4111-CAS-PLAX, 2013 WL 12119735, at *1 (C.D. Cal. Sept. 24, 2013) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945)). By clarifying the scope of a previously issued preliminary injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *See N.A.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

*Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). Such clarification may be obtained on motion by a party or made on the court's own motion.

IV. **DISCUSSION**

Plaintiffs and Defendant Simms bring dueling Motions for Reconsideration and Clarification of the Court's preliminary injunction. Simms makes two requests. First, Simms asks the Court to reconsider and reverse its decision granting the preliminary injunction. Second, if the Court does not set aside the injunction, Simms requests clarification of the Court's injunction order. Specifically, he requests that the Court (1) clarify with particularity the acts to be restrained; (2) clarify whether he is enjoined from using the term "Filmchilla"; (3) clarify whether prior uses of the enjoined mark must be removed; and (4) clarify how much time he may take to comply with each term of the injunction. (Def.'s Mot. 2, ECF No. 47).

In addition to opposing Simms's Motion, Plaintiffs bring their own Motion for Reconsideration and Clarification. First, while they agree with the Court's decision to issue the preliminary injunction, Plaintiffs for some reason ask the Court to reconsider the reasoning behind the Court's issuance of the injunction. Second, although Plaintiffs contend that the scope of the injunction is clear, they also request that the Court clarify the exact terms of the injunction.

Because they address the same issues, the Court will consider the respective motions together. Additionally, the Court will first address reconsideration, and will then consider clarification.

    A.    **Motion for Reconsideration**

        1.    *Irreparable Harm*

            a.    Clear Error

Parties may move for reconsideration where the court committed clear error or the initial decision was manifestly unjust. *Dixon v. Wallowa Cty.*, 336 F.3d 1013, 1022 (9th Cir. 2003) (internal citation omitted).

Previously, the Court found that Plaintiffs had presented sufficient evidence to show a likelihood of irreparable harm in the absence of an injunction. Simms now seems to argue that the Court erred by failing to require Plaintiffs to show real, rather than speculative or conjectural, evidence of a likelihood of irreparable harm. Simms argues that the Court merely speculated without evidence that there might be irreparable harm just because his event is small and low budget compared to Coachella's event. He contends that this difference is in fact "precisely why no reasonable consumer could conclude that the two events are affiliated." (Def.'s Opp., ECF No. 58, at 6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

As Simms's argument hints, "likelihood of confusion" and "irreparable harm" are somewhat inherently related in trademark law. Irreparable harm "usually flows" from a likelihood of confusion. 5 McCarthy on Trademarks and Unfair Competition ("McCarthy") § 30:2 (5th ed.). Because the public will likely be confused as to whether the infringing mark and the registered trademark are affiliated, the trademark owner's business and goodwill are in jeopardy. *Id.* Thus a likelihood of confusion threatens the trademark owner's ability to control its reputation in a way that is, by nature, "irreparable." McCarthy § 30:47. For this reason, many courts long applied a traditional rule in which they automatically presumed irreparable harm whenever the trademark owner could show a likelihood of confusion. *Id.*

In *Herb Reed*, however, the Ninth Circuit concluded that this traditional presumption of irreparable harm no longer applied in trademark cases. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250–51 (9th Cir. 2013). As such, a finding of irreparable harm does not flow automatically from a likelihood of confusion. The *Herb Reed* Court instead explained that "[t]hose seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm" in every case. *Id.* at 1251. *Herb Reed*, however, still acknowledged that loss of control over business reputation and damage to goodwill can constitute irreparable harm. *Id.* at 1250. And "[w]hether a court relies on the traditional presumption or requires proof of irreparable injury, damage to business reputation and goodwill can never be 'adequately' compensated for by a money award after the fact of damage has occurred." McCarthy § 30:47. For this reason, irreparable harm is more likely when an allegedly infringing mark is confusingly similar to the owner's mark. *Id.*

Applying this standard to the present case, the Court finds that it did not err in finding a likelihood of irreparable harm. Consistent with *Herb Reed*, the Court did not automatically presume irreparable harm from a likelihood of confusion.[1] *See* 736 F.3d at 1250–51. Instead, it considered evidence showing that irreparable harm was likely. First, the Court considered evidence showing that Coachella is a high budget event while Filmchella is a low budget event. Coachella's reputation as a high-end, major event is in jeopardy when consumers confuse it with an inexpensive, minor event like Filmchella. (*See* Order, ECF No. 38, at 12 ("Coachella has a significant reputation to uphold. It has drawn massive crowds and exceptionally popular artists. Filmchella has not.")). The association cheapens Coachella's brand and may diminish its ability to charge high prices in the future. Second, in their initial motion for a preliminary injunction, Plaintiffs presented some evidence of Filmchella's low quality, including, for example, some negative Internet postings by Filmchella personnel, an allegedly poor film selection process and concerns about Filmchella's security. If Filmchella were of low quality, confused consumers would likely begin associating Coachella with low quality as well. In sum, Filmchella threatens Coachella's ability to control its reputation in a way that is, by nature, "irreparable." *See* McCarthy § 30:47. This is especially so because were the Court to wait for more evidence, it might later find it impossible to financially compensate Coachella for damage to its business

---

[1] In fact, the Court found only that Plaintiffs had demonstrated that there were "serious questions" going to the merits of Plaintiffs' action against Defendants. Plaintiffs did not show, the Court found, that they were "likely to succeed" on the merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

reputation after it occurred. *Id.* Accordingly, as the Court held in its prior Order, Coachella's loss of control over its own reputation justifies a finding of irreparable harm.

   b.  *New Evidence*

  A party may also may for move for reconsideration on the basis of newly discovered evidence. To successfully argue that newly discovered evidence weighs in favor of reconsideration, a moving party is obligated to show that the new evidence was not available to it at the time of the hearing or motion or that the evidence could not have been discovered through reasonable diligence. *See Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963).

  Here, even though the Court granted the preliminary injunction on October 10, 2017, the parties filed their moving papers before the inaugural Filmchella film festival was held at the end of September 2017. Accordingly, both Plaintiffs and Defendant Simms argue, albeit for different reasons, that new facts stemming from Simms's film festival warrant reconsideration of the Court's irreparable harm analysis, and therefore the Court's issuance of the preliminary injunction.

   i.  *Security at the Filmchella Event*

  Simms first discusses the quality of the security at the event. In finding that irreparable harm was likely, the Court in part relied on Plaintiffs' concerns about poor security at Filmchella harming Coachella's reputation. (Order 12). Simms now argues that the fact that he employed off-duty United States Marines as security guards shows that Plaintiffs' concerns were baseless. Plaintiffs, in turn, dispute the contention that Filmchella's security detail is really new evidence. The information about the event's security, Plaintiffs argue, was or should have been known to Simms before the event was held.

  The Court agrees with Plaintiffs. Simms fails to show either that he was not in possession of this information at the time of the original motion or that he could not have discovered this information by exercising reasonable diligence. *See* C.D. Cal. L.R. 7-18. Accordingly, the Court will not reconsider this issue.

   ii.  *Quality of the Filmchella Event*

  In the same vein, Simms argues that the fact that his event went off without a hitch shows that Filmchella is a high-quality event that will not cause irreparable harm to Coachella's reputation. Specifically, he points to the lack of security issues at the event, the full line-up of films, and positive reviews from attendees. Plaintiffs retort that Filmchella was in fact a low-quality event. They cite, among other things, poor sound and lighting, a lack of plans for the third day, movie screens that blew over, a supposed low-quality swimming pool, and a concert stage made of the flatbed of a truck.

  Despite these arguments, the Court declines to reconsider the irreparable harm analysis. First, some of these facts—the line-up of films at the event, for instance—may have been previously

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

discoverable had the parties exercised reasonable diligence. *See Engelhard Industries, Inc.*, 324 F.2d at 352. Moving for reconsideration on the basis of such facts would consequently be improper.

      To be sure, however, some of these facts—like the lack of problems at the event or the movie screen blowing over during the festival—may indeed constitute new evidence. But under Local Rule 7-18, there must be a "material difference" between the facts available before the decision and those available after the decision to move for reconsideration. C.D. Cal. L.R. 7-18. And if a party moves for reconsideration on the basis of new facts that emerged after the original decision, those facts must be "material." *Id.* Here, even if they constitute new evidence, the facts Plaintiffs and Simms now present do not meet this standard. Plaintiffs now present facts tending to show that Filmchella was a low budget and perhaps low-quality production. But they presented similar, albeit more generalized, facts in their previous Motion for a Preliminary Injunction. In its prior Order, the Court acknowledged these facts by discussing Filmchella's low budget and finding that any failure on the part of Filmchella would be likely to impact Coachella's reputation. (*See* Order 12). The new facts that Plaintiffs now present add nothing new to this analysis. They are accordingly not "material."

      Simms, in turn, puts forth new facts tending to show that Filmchella was successful. Given that Simms had never before held a Filmchella event, these new facts indeed differ from the information previously available to the Court. Even if different, however, the new facts Simms presents are not necessarily material. In its prior Order, the Court emphasized Coachella's significantly higher goodwill and its much larger crowds, budget, and ticket price. (Order at 12). The Court found that any association between a high budget event like Coachella and low budget event like Filmchella would be likely to cause harm to Coachella's reputation. *Id.* The new facts Simms offers about Filmchella's success and high quality do not materially change this analysis, even if they slightly weaken Plaintiffs' evidence of irreparable harm. Accordingly, the Court declines to reconsider this issue.

            iii.    *Quality of Coachella's Event*

      Lastly, Simms argues, essentially, that it would be difficult to harm Coachella's reputation because Coachella's reputation is already tarnished. Facts pertaining to Coachella's reputation are not new evidence. A motion for reconsideration should not be used to reargue the motion or present evidence that should have been presented previously. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 881 (9th Cir. 2009). As such, the Court declines to address this argument.

         2.    <u>*Proximity of the Goods and Likelihood of Expansion*</u>

      Plaintiffs also argue that new evidence warrants the Court's reconsideration of the "proximity of the goods" and "likelihood of expansion" aspects of the Court's analysis. Previously, the Court concluded that the "proximity of the goods" factor favored Plaintiffs while the "likelihood of expansion" factors favored Simms. *See AMF Inc. v. Sleekcraft Boats*, 599 F.3d 341, 348–49 (9th Cir. 2003). In that analysis, the Court compared the two festivals and stated that "Coachella focuses almost entirely on music, whereas Filmchella focuses entirely or almost entirely on film." (ECF No. 38, at 6). This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

difference was not enough to tip the "proximity of the goods" factor in Simms's favor, as the festivals were similar in other ways. It was enough, however, for the Court to conclude that the "likelihood of expansion" factor favored Simms because, the Court found, Coachella had no intention of starting a movie festival and Simms had no intention of starting a music festival.

Plaintiffs now present new evidence from the Filmchella event that, Plaintiffs claim, shows that Filmchella in fact featured live music and art installations, which are both central components of Coachella's festival. According to Plaintiffs, the Court should therefore reconsider its analysis of both these factors keeping this new evidence in mind.

The Court declines to do so. First, the Court found that the "proximity of the goods" *Sleekcraft* factor weighed *in favor* of Plaintiffs. *Id.* at 6. Second, even though the "likelihood of expansion" *Sleekcraft* factor favored Simms, the *Sleekcraft* test as a whole fell in Plaintiffs' *favor*. *Id.* at 10. Third, Plaintiffs *succeeded* in obtaining a preliminary injunction the first time around. *Id.* at 13. As a result, the Court is unsure what exactly Plaintiffs would like the Court to reconsider. The new facts Plaintiffs present here are not "material" because, even if true, they would not affect the Court's conclusion. *See* C.D. Cal. L.R. 7-18. The Court therefore declines to analyze this issue again.

    3.    <u>Defendant's Intent</u>

In its prior Order, the Court considered Simms's intent in holding a film festival that allegedly infringed upon Plaintiffs' trademark. *Id.* at 9. The Court concluded that Simms may have intended to copy Coachella, but Plaintiffs did not establish that he intended to confuse customers. *Id.* at 10. The Court therefore found the factor to weigh in favor of Simms. *Id.*

Plaintiffs argue that the Court erred in finding the factor to weigh in Simms's favor. Specifically, they argue (1) that Simms knew of Coachella's marks when he selected to call his event Filmchella; and (2) that the Court erred in citing the proposition that the intent to copy is not necessarily the intent to confuse. But in this Court, a party must make a manifest showing of the Court's failure to consider material facts to move for reconsideration. *See* C.D. Cal. L.R. 7-18. The facts Plaintiffs present are not new and Plaintiffs do not make a manifest showing that the Court failed to consider them. Moreover, the Court did not make a clear legal error. *See, e.g.*, McCarthy § 23:124 ("Intent to Copy and Compete is Not Intent to Confuse"). Instead Plaintiffs seek to reargue their original motion, even though the Court ruled in their favor the first time around. This is improper on a Motion for Reconsideration. *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 881. The Court declines to reconsider its intent analysis.

    4.    <u>Evidence of Actual Confusion</u>

The Court in its prior Order found no evidence of actual confusion, even as it noted that actual confusion is not necessary at the preliminary injunction stage. (Order, ECF No. 38, at 8). Still, because Plaintiffs had not presented any evidence of actual confusion, the Court found that this *Sleekcraft* factor weighed in favor of Simms. *Id.* Plaintiffs now argue, as they argued in their original motion, that this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

factor is of little relevance, can only favor Plaintiffs at this stage of the proceeding, and cannot favor Simms as a matter of law.

Plaintiffs fail to show clear error here. It is true, as Plaintiffs point out, that this factor is "weighed heavily only when there is evidence of past confusion" and that the "failure to prove instances of actual confusion is not dispositive." *Sleekcraft*, 599 F.2d at 341, 352–353. And indeed, as the Court noted previously, the intent element "is merely a proxy for determining likelihood of confusion." (Order, ECF No. 38, at 10 (citation omitted)). But the Court did not weigh this factor heavily, nor did it find failure to prove actual confusion dispositive. Again, Plaintiffs use this Motion as a chance to reargue a motion the Court already decided *in their favor*.

Simms also contends that new evidence that Plaintiffs have *not* conducted a consumer confusion survey shows that there is no actual confusion and warrants the Court's reconsideration. But as the Court pointed out in its Order, evidence of actual confusion is not necessary at the preliminary injunction stage. The Court accordingly declines to reconsider this issue.

5. *Similarity of the Marks*

Finally Plaintiffs contend that the Court erred in finding the "similarity of the marks" factor to slightly favor them instead of strongly favor them. Given that Plaintiffs prevailed on this factor and on the *Sleekcraft* test as a whole, and given that Plaintiffs continue to use this Motion to reargue their initial motion, the Court will not consider this argument.

6. *Conclusion*

For the foregoing reasons, the Court **denies** Defendant's Motion for Reconsideration and **denies** Plaintiff's Motion for Reconsideration.

**B. Motion for Clarification**

In the alternative, Simms and Plaintiffs seek for the Court to clarify the terms of the injunction.

In its prior Order, the Court made the following statements:

- "Coachella Music Festival and Goldenvoice seek a preliminary injunction to prevent Simms from using the terms "Filmchella," "Coachella for Movies," "Coachella Film Festival," or any other confusingly similar variant of its mark." (Order at 1).
- "Plaintiffs move for a preliminary injunction to prevent Simms from continuing to use the term "Filmchella" or other terms that might dilute or otherwise infringe on the Coachella trademarks." (Order at 3).
- "The Court grants the requested relief." (Order at 13).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

Under Federal Rule of Civil Procedure 65(d), every order granting an injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). Simms contends that the Court's Injunction Order violates this Rule because it is insufficiently clear and refers to other documents.

The Court agrees with Simms. The prior Order only vaguely grants the "requested relief" and seems to refer to other documents like the Plaintiffs' moving papers to define what is enjoined. Accordingly, the Court considers the parties' arguments below.

Simms argues for the narrowest possible interpretation of the Injunction Order—namely, that he be enjoined only from "operating future film festivals under the name Filmchella." (Def.'s Opp. 58). Specifically, Simms argues that the injunction does not apply: (1) to the use of terms other than "Filmchella,"—including "Filmchilla," under which Simms is now operating his business—for any purpose; (2) to the use of the term "Filmchella" to historically describe the event held from September 29 to October 1, 2017; (3) to uses of the term Filmchella in Simms's website metadata or for the limited purpose of redirecting traffic to his current website; or (4) to use of the term "Filmchella" for other, non-film-festival purposes such as the movie project he is currently working on (which he has tentatively entitled "Filmchella the Movie").

Plaintiffs, in turn, argue for the maximal interpretation: that any use of the terms "Coachella, Filmchella, Filmcoachella, Filmchilla, Filmchlla, Chella, Chilla, and Chlla"—or other confusingly similar terms—for any purpose should be enjoined. The Court addresses these issues in turn.

1. *"Filmchilla"*

In its prior Order, the Court stated that any injunction would require Simms "to change the name of any future film festivals he hosts while the injunction is effective to something other than Filmchella." (Order 11). The Court also noted that "an injunction prohibiting the use of the mark 'Filmchella' would not prohibit Simms from hosting any other film festivals." *Id.* (citation omitted). Simms seeks the Court's clarification as to whether these statements mean he may call a future film festival by the name "Filmchilla" instead.[2]

The Court concludes that he may not. As Simms notes, the only *Sleekcraft* factor affected by the difference between "Filmchella" and "Filmchilla" is the "similarity of the marks" factor. The Court previously found that this factor weighed slightly in favor of Plaintiffs. (Order 8). In so finding, the Court found that the Coachella and Filmchella marks were similar. "Filmchilla," while slightly different

---

[2] Plaintiffs argue that under the "safe distance rule," Simms cannot use the term "Filmchilla" as a matter of law because it is too close to "Filmchella." Simms argues that the rule does not apply to preliminary injunctions. Because the Court declines to apply the safe distance rule here, the Court does not address these arguments. *See BBU, Inc. v. Sara Lee Corp.*, No. 09-cv-1787 DMS(RBB), 2009 WL 10672190, at *1–2 (S.D. Cal. Oct. 9, 2009) (explaining that courts may, but are not required to, apply the safe distance rule to determine the scope of an injunction).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

than "Filmchella," does not change this analysis. "Filmchilla" uses only one different letter than the enjoined "Filmchella"; it otherwise looks exactly the same stylistically. *See Eskay Drugs v. Smith, Kline & French Labs.*, 188 F.2d 430, 432 (5th Cir. 1951) (holding that use of the term "Enkay" was a colorable imitation of the enjoined term "Eskay" in violation of an injunction order). Simms argues that "[c]hella and chilla sound and look as dissimilar as ten and tin or pen and pin." (Def.'s Opp. 14). But under some regional accents, "chella" and "chilla" would in fact sound very similar or perhaps identical. Further, as Plaintiffs point out, the fact that an Internet search for "Filmchilla" results in an automatic prompt asking whether the user meant "Filmchella" provides further support for the proposition that the two terms are confusingly similar.

Without re-conducting the entire *Sleekcraft* analysis for every possible variation of the enjoined term, the Court finds that "Filmchilla" is within the scope of the injunction.

    2.    *Prior Use*

Simms also seeks the Court's clarification as to whether he may use the term "Filmchella" to refer historically to the event he held using that name from September 29 to October 1, 2017. Specifically, Simms seeks to use "[p]hotographs or articles about the 2017 festival" which may contain the original name or imagery of signage bearing the "Filmchella" moniker. (Def.'s Mot. 18–19). He asks permission to use the term lest he lose any reputation he has managed to build from the successful occurrence of the event. Plaintiffs assert to the contrary that Simms may not, as a matter of law, "build goodwill in a trademark that is infringing." (Pls.' Mot. 16).

Having considered these arguments, the Court finds that Simms may not use the enjoined terms in a promotional fashion to advertise or promote his company's film festival events. Accordingly, Simms need not scrub the Internet of every last mention of the fact that he held a festival named Filmchella at the end of September 2017, nor need he refrain from using the term "Filmchella" in, for example, the course of this litigation. Simms may preserve the historical record. However, Simms should not attempt to sidestep the injunction simply by disguising promotions for future events in historical garb.[3] To do so would risk causing the very harm to Plaintiffs that the preliminary injunction order sought to prevent.

    3.    *Website Metadata and Redirect*

---

[3] For example, if Simms were to post on the Internet an old video from mid-2017 that featured the term "Filmchella" for the purpose of encouraging fans to attend a subsequent film festival, he would violate the terms of the injunction order. This is so even though the video would technically be "historical." If by contrast Simms were simply to fail to remove an old article that used the enjoined terms, but did not refer to it or use it in any way to promote future events, he would not violate the terms of the injunction order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

Additionally, Simms seeks the Court's clarification as to whether he may use the enjoined terms for the limited purpose of redirecting web traffic to his current website. He further asks the Court to clarify whether he may use the enjoined terms as metatags to allow web users to find his website on Internet search engines. Simms argues that domain name use, metatags on his website, and social media account names fall outside the scope of the injunction.

First, the Court finds that using the enjoined terms as domain names—even if solely for the purpose of redirecting web traffic—falls within the scope of the injunction. Domain names are visible to the viewing public. As such, using enjoined terms in domain names to redirect traffic to a website that promotes Simms's film festivals constitutes using the terms to promote Simms's film festivals. The Court already explained that using the enjoined terms for this purpose is prohibited. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1061 (9th Cir. 1999) (holding that the defendant's confusingly similar domain name would likely confuse the public); *NextEngine Ventures, LLC v. Lastar, Inc.*, No. SACV13-00463-BRO-JPRX, 2014 WL 12581777, at *4 (C.D. Cal. June 3, 2014).

Second, the same reasoning applies to social media accounts. If they are used to promote or advertise Simms's film festivals, they fall within the scope of the injunction. Simms should make a good faith effort to avoid using the enjoined terms to promote his film festivals.

The Court concludes differently, however, with respect to metatags. Metatags are HTML code, invisible to the user, "intended to describe the contents of a website." *Brookfield*, 174 F.3d at 1045. When a term appears in the metatags of a webpage, the webpage is more likely to appear near the top of a list of search results. *Id.* In *Brookfield*, the Ninth Circuit explained that using infringing terms in metatags results in a lower likelihood of confusion than using infringing terms in a domain name. *Id.* at 1062. Because metatags are invisible to the user, and because the search engine user will see a list of search results with proper domain names, it is "difficult to say" a consumer is likely to be confused by their use. *Id.* Nonetheless, using infringing terms in metatags can still result in "initial interest confusion." *Id.* A user initially interested in the trademark owner's product who discovers the infringing product in a list of search results will realize the two products are not affiliated, but may be intrigued and simply decide to use the infringing product instead. *Id.* Accordingly, the owner of the infringing mark may still improperly benefit from the trademark owner's goodwill and reputation. *Id.*

Here, if Simms uses the term "Coachella" in the metatags of his website, it may result in initial interest confusion. The user originally interested in Coachella who conducts a search and discovers the Filmchella website will likely realize Filmchella and Coachella are not the same event. But the user may nonetheless be intrigued by Filmchella and decide to attend the event anyway. In that sense, Simms would improperly benefit from Coachella's goodwill and reputation.

However, the user who conducts a search for "Filmchella" or "Filmchilla" is likely not originally interested in Coachella at all. Rather, that user is probably interested in and searching for Simms's event. Perhaps, for example, an attendee of the first Filmchella festival enjoyed it and wants to learn more

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

about Simms's future projects. In that case, there would be no "initial interest confusion" because the user had no initial interest in Coachella. Simms would therefore not be improperly benefitting from Coachella's goodwill, but rather benefitting from his own.

To be sure, Plaintiffs argue that Simms may not build goodwill in a trademark that is infringing. But as Simms correctly points out, the Court did not find definitively that Simms had infringed upon Coachella's trademark. Rather, the Court found that Plaintiffs had met their burden in moving for a preliminary injunction. In so finding, the Court found that the "balance of equities" tipped sharply in Plaintiffs' favor because, in part, the irreparable injury to Simms would be relatively small—Simms would simply have to change the name of any future festivals. To now prevent Simms from letting his fans find his events using Internet search engines would cause relatively much greater harm to Simms's business. By contrast, allowing Simms to use these metatags would result in comparatively less harm to Plaintiffs because metatags are inherently less likely to cause confusion. *See Brookfield*, 174 F.3d at 1062.

Accordingly, the Court concludes that using "Filmchella" or "Filmchilla" metatags would not fall within the scope of the injunction. Using "Coachella" metatags, however, would fall within the injunction's scope.

### 4. *Filmchella the Movie*

Lastly, Simms asks the Court to clarify whether he may use the enjoined terms in his movie project, tentatively titled "Filmchella." This movie, he explains, will be a "docudrama" that "capture[s] the struggle of a young artist as he withstands the attempts of a corporate entity to steal his intellectual property." (Def.'s Reply 10).

Without analyzing every possible use of the word "Filmchella," the Court clarifies that using the term "Filmchella" for this movie project does not fall within the injunction's scope. *See J.K. Harris & Co., LLC v. Kassel*, 253 F. Supp. 2d 1120, 1125–26 (N.D. Cal. 2003) (permitting the use of potentially infringing marks as critical commentary).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06059-RGK-GJS | Date | December 13, 2017 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC v. Robert Trevor Simms* | | |

### V. CONCLUSION

For the foregoing reasons, the Court holds as follows:

Plaintiffs' Motion for Reconsideration is **DENIED.**

Simms's Motion for Reconsideration is **DENIED.**

Additionally, the Court clarifies the injunction in the manner set forth above. Rather than craft the exact contours of the injunction here, the Court directs the parties to file proposed injunction orders consistent with the above within three (3) days of the issuance of this Order.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer _____